### No. 2519
### Second Circuit

---

## A. J. McCEARLEY v. A. B. LEARNED

---

(December 1, 1925, Opinion and Decree)
(March 11, 1926, Rehearing Refused)

---

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Appeal—Par. 625.**
The finding of the trial court on a matter of fact, namely, that the loss of plaintiff's cattle was not due to negligence of defendant's employees or agents, being clearly correct is affirmed.

Appeal from Seventh Judicial District Court of Louisiana, Parish of Concordia, Hon. R. N. Taliaferro, Judge.

This is a suit to recover the value of cattle which died from eating poison on defendant's farm. There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Philip Hough, of Vidalia, attorney for plaintiff, appellant.

Dale, Young and Dale, of Vidalia, attorneys for defendant, appellee.

ODOM, J.    Plaintiff brings this suit to recover the value of forty-four head of cattle which he alleges died from eating calcium arsenate and sodium nitrate on defendant's farm.

He alleges that these poisons were carelessly left exposed to his cattle on defendant's farm and that defendant is liable to him for the damage caused thereby.

Defendant denied liability.

The case was tried in the District Court and resulted in a judgment in favor of defendant, rejecting plaintiff's demands at his cost; from which judgment plaintiff has appealed.

We are indebted to our learned Brother of the District Bench for a well considered written opinion, which we think correctly states the case and the facts adduced on the trial; and as we fully agree with his statement of the facts and his findings thereunder, we adopt his opinion and make it our own.

OPINION OF THE DISTRICT JUDGE.

"Plaintiff sues defendant, who is a non-resident, for the value of 44 head of cattle alleged to have been killed, or to have died, as a result of eating sodium nitrate and calcium arsenate negligently stored and handled on defendant's Black Hawk plantation in Concordia parish by the agents and representatives of defendant.

"Defendant denies all liability, denies all the essential allegations of the plaintiff's petition, and denies negligence of such a character as would render him liable for the value of plaintiff's cattle, if killed by eating the poisons named.

"The established facts appear to be these. That in the autumn of 1923 plaintiff had 65 head of good cattle which he pastured or allowed to graze on the Black Hawk plantation belonging to defendant after the crops had been gathered and the field opened up so as to allow cattle to

enter therein, as was and had been the custom; that quite a large number of cattle grazed upon this plantation at the time plaintiff's did; that during the winter of 1923-1924 an unusual number of cattle died on this plantation, such a large number that attention was attracted thereto, but the cause was not determined, unless it be as claimed by plaintiff; that wild peas grow on the Black Hawk plantation in large quantities and that after very cold weather, or rains, cattle will die from eating these peas; that cold weather and rain cause a poison to form in the roots of these peas which will kill cattle after eating them; that calcium arsenate is a deadly poison to cattle and that as a rule one ounce is sufficient to kill; that sodium nitrate is also a poison and that it requires twelve ounces of this to kill a cow; that the former is used on cotton by dusting or powdering the cotton therewith to prevent boll-weevil depredation, and the latter is used as a fertilizer to crops; that plaintiff had the contents of the viscera of one steer analysed by a competent chemist, May 14, 1924, which he found dead near his place, and the chemist found sodium nitrate therein; though it was not testified in sufficient quantity to kill; a quantitive analysis not having been made; that plaintiff saw three of his cattle dead on the plantation, or about, before he removed them in March, 1924, at which time he could only count or locate twenty-one head of his own; that after taking the cattle from the Black Hawk pasture he saw nine more head of them dead; that the employees and agents of defendant were not as careful as they should have been in storing, handling and distributing these poisons.

## OPINION

"Two questions are presented in this case, one of fact and the other of law. The first is, has the plaintiff established the loss of his cattle by eating these poisons on and about the plantation of defendant with that degree of certainty that would justify a court in granting him relief; and the other is, if he has discharged the burden of proof in this respect, by establishing his loss and the cause of same, is the negligence of defendant's employees, agents, etc., of such a character as to render him liable for plaintiff's loss.

"Plaintiff determines his own loss in cattle by a process of elimination and deduction. He had 65 head when they commenced to graze on the Black Hawk place about December 1, 1923, and he could only count 21 head of his own when they were taken out of this place about April 1, 1924; and, according to his own testimony, page 8, he lost 9 head after the fields were closed to cattle, thus leaving him only some 12 head, which corresponds with his assessment for 1924. He only sues for the value of 44 head. Of this number the plaintiff only saw twelve head dead and of this number only one is shown to have actually eaten poison, viz: sodium nitrate, on or about May 13, 1924, near the home of Hezekiah Wilson. It was the contents of the stomach of this animal that the chemist analysed and found it to contain sodium nitrate. It will be observed that at this time the feed-house of defendant wherein the sodium nitrate had been stored had been fenced some thirty days. Testimony of witness Wales, page 65, and of plaintiff, page 7. It is a fair inference that this animal ate the poison from the sack on the gallery of the home of Hezekiah Wilson; but even assuming this to be true, it does not appear that defendant or his agents placed the poison there or were responsible to any extent for its being there.

"To justify the court in awarding plaintiff judgment, even if defendant's negligence is such that would render him liable for plaintiff's loss, a proposition we entertain much doubt upon, it is necessary to conclude that the evidence establishes that the 32 head of cattle which were missing and which no one has seen dead, according to the evidence in this case, did die and that they died of eating one or the other of these poisons, on defendant's plantation. We are unable to agree to this.

"It is probable some or all of the other 12 head (excluding the steer that died at Hezekiah Wilson's house) died of eating some of these poisons, or that the eating of the poison contributed to the death of some or all, but does the evidence establish this with legal certainty? We do not think it does.

"It is established that the winter of 1923-1924 had some cold and rainy intervals; that eating wild peas during or after such weather conditions will kill cattle within a short time, and that there are many of such peas on Black Hawk; it is also shown by the evidence that herds of cattle are regularly subject to normal death rates which it is well known increase in winter, due to bad weather conditions.

"With these facts confronting us, it might not be improper to ask, how many of these eleven head might have died of normal cause, how many of eating wild peas, and how many of eating poison? Where can the line of separation be drawn?

"Practically all of the witnesses who testified in the case agree that eating wild peas has killed many of their cattle, and plaintiff testified that at first he thought this was the cause of the death of his cattle, page 18. Mr. Gregory, in his testimony, page 55, states that he had the contents of the stomachs of some cattle examined in 1920 by Dr. Rank and that it was found that wild peas was the cause of their death.

"After a careful consideration of the testimony in this case, we are of the opinion that plaintiff has not discharged the burden of proof resting on him; that he has not established with legal certainty that the loss of his cattle was due to eating these poisons on defendant's plantation.

"It is, for said reasons, ordered, adjudged and decreed that the demand of plaintiff be rejected and his suit dismissed at his cost."

Having found for the defendant on the question of fact, it is unnecessary to discuss the question of law raised by defendant.

For the reasons assigned it is ordered, adjudged and decreed that the judgment appealed from be affirmed at the cost of plaintiff in both courts.